# 23-6099-cr

## United States Court of Appeals

*for the*

## Second Circuit

UNITED STATES OF AMERICA,

*Appellee,*

– v. –

LAFI KHALIL,

*Defendant,*

GAZI IBRAHIM ABU MEZER, AKA AMIR,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-APPELLANT

MICHAEL O. HUESTON
MICHAEL HUESTON, ATTORNEY AT LAW
*Attorney for Defendant-Appellant*
16 Court Street, 35th Floor
Brooklyn, New York 11241
(718) 246-2900

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......................................................... ii

STATEMENT OF SUBJECT MATTER AND
APPELLATE JURISDICTION ........................................................ 1

STATEMENT OF ISSUE PRESENTED .................................... 1

STATEMENT OF CASE ................................................................ 2

    A. Introduction ...................................................................... 2

    B. The Criminal Case .......................................................... 2

    C. Post-Conviction Proceedings .......................................... 6

    D. Appellent's Motion For Leave to
       File A Successive Petition ................................................ 7

    E. Petition Filed in the Eastern District of New York .................... 10

SUMMARY OF ARGUMENT ................................................... 19

ARGUMENT ............................................................................... 20

I.    THE DISTRICT ERRED IN REFUSING TO
      SENTENCE ABU MEZER *DE NOVO* ............................ 20

    A. *Peña* Was Wrongly Decided ........................................ 20

    B. Judge Block Abused His Discretion ............................... 30

CONCLUSION ............................................................................ 32

# TABLE OF AUTHORITIES

**CASES**                                                  **Page**

*Gall v. United States*,
    552 U.S. 38 (2007) ............................................................ 24

*Johnson v. United States*,
    576 U.S. 591 (2015) ............................................................ 7

*Kaminski v. United States*,
    339 F.3d 84 (2d Cir. 2003) ............................................... 22

*Molina-Martinez v. United States*,
    136 S. Ct. 1338 (2016) ..................................................... 25

*Pepper v. United States*,
    562 U.S. 476 (2011) ......................................................... 27

*Rita v. United States*,
    551 U.S. 338 (2007) ......................................................... 14

*Savoca v. United States*,
    21 F.4th 225 (2d Cir. 2021) ............................................. 18

*Sessions v. Dimaya*,
    138 S. Ct. 1204 (2018) ...................................................... 9

*Werber v. United States*,
    149 F.3d 172 (2d Cir. 1998) ............................................. 23

*United States v. Archer*,
    671 F.3d 149 (2d Cir. 2011) ............................................. 25

*United States v. Awan*,
    607 F.3d 306 (2d Cir. 2010) ............................................. 15

*United States v. Ayyad*,
    No. 20-3832, 2023 U.S. App. LEXIS 3460,
     (2d Cir. Feb. 14, 2023) .................................................... 30

*United States v. Bannister*,
    786 F. Supp. 2d 617 (E.D.N.Y. 2011) ................................................. 12

*United States v. Batiste*, et al.,
    06 Cr. 20373 (JAL) (S.D.F.L.) ......................................................... 16

*United States v. Booker*,
    543 U.S. 220 (2005) ............................................................................. 4

*United States v. Brooker*,
    976 F.3d 228 (2d Cir. 2020) ............................................................. 31

*United States v. Bryson*,
    229 F.3d 425 (2d Cir. 2000) ........................................... 23, 26, 31

*United States v. Cavera*,
    550 F.3d 180 (2d Cir. 2008) ............................................................. 26

*United States v. Concepion*,
    983 F.2d 395 (2d. Cir. 1992) ............................................................. 5

*United States v. Crosby*,
    397 F.3d 103 (2d Cir. 2005) ............................................................. 26

*United States v. Davis*,
    139 S. Ct. 2319 (2019) ....................................................................... 7

*United States v. Dorvee*,
    616 F.3d 174 (2d Cir. 2010) ................................................ 12, 24, 25

*United States v. Draper*,
    553 F.3d 174 (2d Cir. 2009) ............................................................. 22

*United States v. Fatico*,
    603 F.2d 1053 (2d Cir. 1979) ........................................................... 26

*United States v. Fernandez*,
    443 F.3d 19 (2d Cir. 2006) ............................................................... 26

*United States v. Genao*,
    343 F.3d 578 (2d Cir. 2003) ............................................................. 25

*United States v. Gordils*,
    117 F.3d 99 (2d Cir. 1997) .......................................................... 27, 28

*United States v. Guiliano*,
    644 F.2d 85 (2d Cir. 1981) ................................................................ 29

*United States v. Hertular*,
    562 F.3d 433 (2d Cir. 2009) .............................................................. 23

*United States v. Hillary*,
    106 F.3d 1170 (4th Cir. 1997) ........................................................... 21

*United States v. Jones*,
    878 F.3d 10 (2d Cir. 2017) ................................................................ 29

*United States v. McGinn*,
    787 F.3d 116 (2d Cir. 2015) .............................................................. 25

*United States v. Meskini,*
    319 F.3d 88, 92 (2d Cir. 2003) .......................................................... 15

*United States v. Natal*,
    849 F.3d 530 (2d Cir. 2017) .............................................................. 21

*United States v. Nayyar*,
    2013 U.S. Dist. LEXIS 79002,
    (S.D.N.Y. June 4, 2013) ................................................................... 16

*United States v. Peña*,
    58 F.4th 613 (2d Cir. 2022) ................................................ 1, 18, 20, 28

*United States v. Powers*,
    842 F.3d 177 (2d Cir. 2016) ....................................................... 10, 22

*United States v. Rattoballi*,
    452 F.3d 127 (2d Cir. 2006) .............................................................. 25

*United States v. Quintieri*,
    306 F.3d 1217 (2d Cir. 2002) ..................................................... passim

*United States v. Rigas*,
    583 F.3d 108 (2d Cir. 2009) ..................................................... 2, 18, 21

iv

*United States v. Stewart*,
509 F.3d 93 (2d Cir. 2009) .......................................................... 11, 19

*United States. v. Viglakis*,
12 Cr. 585 (SHS) (S.D.N.Y.) ........................................................... 16

*United States v. Winestock*,
340 F.3d 200 (4th Cir. 2003) ............................................................. 8

*Yaman v. U.S. Dep't of State*,
634 F.3d 610 (D.C. Cir. 2011) ........................................................ 29

## CONSTITUTIONAL PROVISIONS AND STATUTES

18 U.S.C. § 924 ................................................................... passim

18 U.S.C. § 2332a ............................................................... 2, 7, 10

18 U.S.C. § 2332b ................................................................. 3, 11

18 U.S.C. § 3553 ........................................................ 11, 16, 17, 23

28 U.S.C. § 1291 ........................................................................ 1

28 U.S.C. § 2255 ................................................................... passim

28 U.S.C. § 2106 .................................................................. 28, 29

U.S.S.G. § 2A1.5 ...................................................................... 3

U.S.S.G. § 2A2.1 ................................................................... 3, 13

U.S.S.G. § 2K2.4 ...................................................................... 4

U.S.S.G. § 2M5.3 .................................................................... 16

U.S.S.G. § 2M6.1 .................................................................... 13

U.S.S.G. § 3A1.1 ...................................................................... 3

U.S.S.G. § 3A1.4 ................................................................ passim

U.S.S.G. § 3B1.1 ...................................................................... 3

U.S.S.G. § 3C1.1 ...................................................................... 3

U.S.S.G. § 3C1.2 ........................................................................... 3

U.S.S.G. § 5G1.2 ............................................................................ 4

U.S.S.G., App. C, Amend. 526 ................................................... 14

U.S. Sentencing Guidelines Manual § 1A1.3 ............................ 14

Fed. R. Civ. P. 60 ......................................................................... 6

## OTHER AUTHORITIES AND SOURCES

Brian Means, *Federal Habeas Manual* § 13:7 (2022 ed.) .......................... 21

James P. McLoughlin, Jr., *Deconstructing United States Sentencing Guidelines Section 3A1.4: Sentencing Failure in Cases of Financial Support for Foreign Terrorist Organizations*, 28 LAW & INEQ. 51, 112, n. 421 (2010). ....................................................................... 14

*U.S. Sentencing Comm'n, 2018 Sourcebook of Federal Sentencing Statistics*, Table 15 (2018), https://www.ussc.gov/research/sourcebook/archive/sourcebook-2018 ........ 17

## Statement Of Subject Matter And Appellate Jurisdiction

Defendant-Appellant Gazi Ibrahim Abu Mezer ("Appellant" or "Abu Mezer") appeals a final order and amended judgment entered in the United States District Court for the Eastern District of New York (Block, J.), on January 9, 2023, and January 23, 2023, respectively, granting his successive 28 U.S.C. § 2255 petition, vacating his 18 U.S.C. § 924(c)(1) conviction and 30-year sentence on that conviction, but resentencing him to life on the remaining two counts without a *de novo* resentencing. Abu Mezer filed timely notices of appeal on January 19, 2023, January 24, 2023, and January 26, 2023.[1] The district court had jurisdiction under 28 U.S.C. § 2255. This Court has jurisdiction under 28 U.S.C. §§ 1291 and 2253.

## STATEMENT OF ISSUE PRESENTED

1. Did the district court err, and abuse its discretion, when it refused to resentence Abu Mezer and entered an amended judgment without the vacated count after granting his § 2255 motion? Until *United States v. Peña*, 58 F.4th 613 (2d Cir. 2022), this Court followed the rule "where a count of conviction is overturned – as opposed to an aspect of a sentence – resentencing must be *de novo*." *United States v. Rigas*, 583 F.3d 108, 116

---

[1]Appellant also filed a timely Motion for a certificate of appealability in 23-101, *Gazi Ibrahim Abu Mezer v. United States*.

1

(2d Cir. 2009). We contend that *Peña* was wrongly decided, and Judge Block abused his discretion in not granting a *de novo* sentencing.

## STATEMENT OF THE CASE

### A.    Introduction

On January 9, 2023, the Honorable Frederic Block granted, in part, Abu Mezer's successive 28 U.S.C. § 2255 petition, vacating his § 924(c) conviction and 30-year sentence on that conviction and resentenced him to life on the remaining two counts without a *de novo* resentencing. (A-46).[2]

### B.    The Criminal Case

In 1997, the government charged Abu Mezer and his co-defendant Lafi Khalil in a superseding indictment with conspiracy to use a weapon of mass destruction in violation of 18 U.S.C. § 2332a(a)(2) and (c)(2) (Count ,One); and threatening to use a weapon of mass destruction in violation of 18 U.S.C. § 2332a(a)(2) and (c)(2) (Count Two). Abu Mezer was also charged with using and carrying a firearm, to wit: a pipe bomb, during and in relation to a crime of violence, namely the crimes charged in Counts One and Two in violation of 18 U.S.C. § 924(c)(1) (Count Three). (A-30). Co-defendant

---

[2]"A", "CA", "SPA", "D.E.", and "PSR." refer to Abu Mezer's appendixes, the docket entries in 97 Cr. 804 (FB) (E.D.N.Y.), and his pre-sentence report.

Khalil was charged singularly at Count Four with receiving and possessing counterfeit alien registration credentials. (Id.).

In 1998, a jury found Abu Mezer guilty of Counts One, Two, and Three but acquitted Khalil of Counts One and Two, while convicting him of the false credential crime set forth in Count Four. (D.E. 116).

At Abu Mezer's 1999 sentencing, now Circuit Court Judge, the Honorable Rena Raggi, determined that Abu Mezer's total offense level was 47 and his criminal history category was VI.[3] The court calculated his offense level as follows: a base offense level of 28 as per U.S.S.G. § 2A1.5(c)(2) (which cross references U.S.S.G. 2A2.1(a)(1)); plus 12 levels as per U.S.S.G. § 3A1.4(a) because the offenses of conviction involved and were intended to promote a federal crime of terrorism as defined in 18 U.S.C. § 2332b(g); plus 3 levels as per U.S.S.G. § 3A1.1(a) for a victim-related adjustment; plus 2 levels as per U.S.S.G. § 3C1.1 for obstruction of justice; plus 2 levels as per U.S.S.G. § 3C1.2 for reckless endangerment during flight; and his criminal history category was VI as per U.S.S.G. § 3A1.4(b).

---

[3]D.E. 167 (Judgment), 170 and 260 at Exhibit A to Successive Petition (Sentencing Transcript); and PSR and Addenda at ¶¶ 27, 30, 31, 32, 33, 39, 41, 43, and 46. Judge Raggi did not apply the 2 level enhancement as per U.S.S.G. § 3B1.1(c) for being an organizer of criminal activity.

Based on a total offense level of 47 and a criminal history category of VI, Abu Mezer's guideline range was life, with Count Three requiring a mandatory term of 30 years to run consecutive to any other term of imprisonment pursuant to U.S.S.G. §§ 2K2.4 and 5G1.2(a).[4]

The parties submitted sentencing submissions;[5] however, sentencing counsel was constrained in his arguments because *United States v. Booker*, 543 U.S. 220 (2005), had not yet been decided. Nevertheless, sentencing counsel argued for a departure because of the stacking of Count Three, citing *United States v. Concepion*, 983 F.2d 395 (2d Cir. 1992), emphasizing that Abu Mezer was not beyond rehabilitation and redemption. Sentencing counsel noted that Abu Mezer was, then, only 25 years old and suffered a deprived and traumatic childhood growing up in Hebron in the West Bank during great political turmoil where his family was dispossessed and subjected to abject poverty. As argued, Abu Mezer and his family were repeatedly abused by Israeli soldiers, which psychologically scarred him. In addition, sentencing counsel pointed out that Abu Mezer's mother died of breast cancer, and he had to be cared for by "everybody and nobody" and that the school he was sent to was more interested in political indoctrination

---

[4]*See* PSR and 1ˢᵗ Addendum at ¶¶ 81 and 82.

[5]D.E. 163, 165, and 173 (D.E. 173 is under seal, but provided at CA-1).

than educating him.  Counsel also stressed that many of Abu Mezer's friends were shot and killed in protests, which fomented his resentment and made him feel like an outsider.

Sentencing counsel also described a deeply disturbing incident while Abu Mezer was incarcerated in Israel as a teenager.  For three months, he was tortured, which included being beaten, threatened with electric shocks, made to stand chained for hours, forced to urinate and defecate on himself, pistol-whipped, and used as a human shield with soldiers tying him to a jeep to discourage protestors from attacking them.  Abu Mezer grew so desperate that he tried to hang himself, and while detained at the Metropolitan Detention Center during his prosecution, he continued to suffer from suicidal ideations.  As mentioned at sentencing, Abu Mezer was able to resettle in Canada, got married, and had a son.  The marriage dissolved in large part because of the trauma he had suffered.

The court sentenced Abu Mezer to life on Counts One and Two and on Count Three to a consecutive 30-year sentence for using and carrying a bomb in connection with those crimes, in violation of 18 U.S.C. § 924(c). (D.E. 167).

### C.    Post-Conviction Proceedings

Abu Mezer unsuccessfully challenged his conviction on direct appeal and in a habeas corpus proceeding.[6]  In 2002, he challenged the judgment denying his habeas petition, pursuant to Fed. R. Civ. P. 60(b), which was denied.[7]  Abu Mezer has filed other motions challenging his conviction and sentence, which have also been denied.[8]  Abu Mezer has also moved for leave to file successive habeas petitions that were denied.[9]  Abu Mezer also sought certificates of appealability as to the orders denying his two prior Rule 60(b) motions and a petition for writ of error *coram nobis*, which were denied.[10]

---

[6]*See* 2d. Cir. Docket 98-1723(L), 99-1134, May 31, 2000 Opinion; *United States v. Khalil*, 214 F.3d 111 (2d Cir. 2000); and 01 Civ. 2525 (E.D.N.Y.), Doc. No. 16, Aug. 28, 2001, Memorandum and Order.

[7]*See* 01 Civ. 2525 (E.D.N.Y.), Doc. No. 56, July 27, 2005, Memorandum and Order.

[8]*See, e.g.,* 01 Civ. 2525 (E.D.N.Y.), Doc. Nos. 78, Jan. 29, 2007 Order; 79, Jan. 30, 2007 Order; 87, Sep. 18, 2007 Order; and 90, Nov. 2, 2007 Mandate.

[9]*See* 2d. Cir. Dockets 06-1498, May 1, 2006 Order; and 14-2607, Oct. 8, 2014 Order.

[10]*See* 2d. Cir. Dockets 05-3791(L), 05-4385 (Con), 07-1156; and 01 Civ. 2525 (E.D.N.Y.), Doc. No. 90, Mandate.

In August 2016, Abu Mezer filed his third "Rule 60(b)" motion, and, thereafter, a series of supplemental applications claiming that the trial court lacked jurisdiction over his case and alleged various forms of procedural error, including defects in the indictment, trial, and at sentencing.[11]  In these filings, Abu Mezer emphasized that Khalil's acquittal on Count One makes his conviction on that same count untenable since the conspiracy, as alleged and prosecuted, only involved him and Khalil.  Abu Mezer continues to assert these arguments in his *pro se* applications.

**D.**   **Appellent's Motion For Leave to File A Successive Petition**

In July 2018, Abu Mezer moved in this Court for leave to file a successive 28 U.S.C. § 2255 motion, primarily based on *Johnson v. United States*, 576 U.S. 591 (2015), and *United States v. Davis*, 139 S. Ct. 2319 (2019), arguing, *inter alia*, that his 18 U.S.C. § 924(c) conviction (Count Three of the superseding indictment) predicated in part on conspiracy to use a weapon of mass destruction under 18 U.S.C. § 2332a (Count One of the superseding indictment) was no longer valid after *Johnson* and *Davis*.  (D.E 243, Mandate).  In response, this Court terminated the stay it previously entered and granted Abu Mezer's motion, transferring the case to the Eastern

---

[11]D.E. 205, 207, 220, 223, 225, 226, 227, 228, 229, 230, 232, 234, 235, 236, 237, 238, 239, 240, 241, and 242.  The court dismissed Abu Mezer's motions at 207 to appointment of counsel; for a hearing at 222; for a hearing at 226; for a hearing at 229; and to expedite at 232.

District of New York, as he had made a *prima facie* showing that his proposed § 2255 motion satisfied the requirements of § 2255(h). *Id.* This Court did not examine Abu Mezer's other arguments or claims, citing *United States v. Winestock*, 340 F.3d 200, 205 (4th Cir. 2003). *Id.*

Among the issues that this Circuit did not examine were whether: "the district court lacked the power to entertain the prosecution" because "[t]he charges in the indictment against Mr. Abu Mezer are inextricably intertwined. Count [One] alleges a conspiracy to commit an act of violence and incorporated the carrying and use of a firearm as an overt act; Count [Three] is the overt act of carrying and using the weapon, a violation of 18 U.S.C. § 924(c)(1)(A)."[12] Abu Mezer supplemented this argument in a September 4, 2019, *pro se* letter, adding that: "petitioner in his present application contends that his convictions of all counts [are] no longer constitutionally valid…."[13]

This Court also did not analyze an issue embedded in Abu Mezer's July 1, 2019 *pro se* supplemental letter, where he argued: "There is no actual crime of violence committed in this case, when the police raided [his]

---

[12]*See* 2d Cir. Docket 18-1999, Doc. No. 1, June 2, 2018 letter at "pages 4 and 5".

[13]*See id.*, Doc. No. 53 at "(2)".

apartment and shot him during his sleep a pipe bomb was found in his bedroom and the sole co[-]conspirator indicted with [him] was fully acquitted of all the charges in the indictment as to the conspiracy, [so] conspiracy [does] not even exist in this case nor was there a crime of violence, [he] was convicted of all counts this was a violation of his due process clause [rights]."[14]

In an October 31, 2019 *pro se* letter, Abu Mezer restated these arguments in his response to the Government's October 18, 2019 opposition; and while he relied on *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), Abu Mezer stated he was challenging the Court's "subject matter jurisdiction of the entire case."[15]  In Abu Mezer's November 3, 2019 *pro se* letter, he emphasized that: "the district court lacked jurisdictional power to impose [his] conviction [and] sentence" him and "no conspiracy and no act of violence happened [in] the case at bar", and that his convictions must be vacated because his "liberty has been ta[]ken away under criminal law so vague that [it] fails to give ordinary people fair notice and … invites arbitrary enforcement."[16]  Abu Mezer continued to assert these arguments in

---

[14]*See id.*, Doc. No. 50 at "page 2".

[15]*See id.*, Doc. No. 68 at "page 1".

[16]*See id.*, Doc. No. 70 at "page 2" and "page 4".

his supplemental filings, also emphasizing that 18 U.S.C. § 924(c)'s elements clause requires "active employment of [a] weapon[,] carry or use in [an] actual crime of violence…."[17]

### E.   Petition Filed in the Eastern District of New York

In 2021, in the Eastern District of New York, Abu Mezer filed his § 2255 motion raising the following issues: 1) Count Three (18 U.S.C. § 924(c)(1)) must be vacated and dismissed because Counts One and Two (18 U.S.C. § 2332a) are categorically not crimes of violence, are facially vague and overbroad, failed to state a claim, and that lenity compelled dismissal; 2) 18 U.S.C. § 2332a is facially vague and overbroad; 3) Count One must be dismissed because Khalil was acquitted; and 4) if successful, he should be resentenced to time served on the remaining counts after an in-person *de novo* sentencing, citing *United States v. Powers*, 842 F.3d 177, 179 (2d Cir. 2016).  (D.E. 260, 267, 269, 270, 271, 275, 277, 278) (CA-35).

Regarding sentencing, Abu Mezer principally argued that the Terrorism Enhancement of U.S.S.G. § 3A1.4 should not be applied.  (D.E. 260).  Under that Guideline provision, if the offense of conviction "involved, or was intended to promote, a federal crime of terrorism," the Guideline for

---

[17]*See id.*, Doc. Nos. 73, 76, 79 at p. 3 of 4 ("924(c)['s] elements [clause] requires 'active employment['] of [a] weapon carry or use in [an] actual[] crime of violence…"), and 86.

the offense is increased by twelve levels and the defendant's criminal history category is increased to category VI. To qualify as a "federal crime of terrorism," two requirements must be met. First, the offense must be "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." 18 U.S.C. § 2332b(g)(5)(A). Second, the offense of conviction must be a violation of a specific federal criminal statute listed in 18 U.S.C. § 2332b(g)(5)(B).

18 U.S.C. § 2332a is an enumerated offense in 18 U.S.C. § 2332b(g)(5)(B)(i). However, Abu Mezer argued that the terrorism enhancement of U.S.S.G. § 3A1.4 was inapplicable to him for two reasons. First, the offense conduct did not "involve" a federal crime of terrorism because the commission of that particular offense was not calculated to affect the conduct of a government as set forth in 18 U.S.C. § 2332b(g)(5)(A); and second, his offense conduct was insufficient to support a finding that he intended to "promote" a federal crime of terrorism. *See United States v. Stewart*, 590 F.3d 93, 137-39 (2d Cir. 2009).

Abu Mezer also argued that a *de novo* sentencing was required because the Guidelines are no longer mandatory (D.E. 260, 267, 277). He further argued that a downward variance should be applied to him because

the Guidelines failed to include critical factors about his background and character. *See* 18 U.S.C. § 3553. (D.E. 260, 267, 277).

We explained that Abu Mezer's life, like so many offenders, is one of obstructed potential, and while he is not blameless, he is not responsible for the circumstances in which he was born and raised, and this is a factor Abu Mezer asked the district court to consider in applying a variance, citing *See United States v. Bannister*, 786 F. Supp. 2d 617, 688-89 (E.D.N.Y. 2011).

Abu Mezer argued that post-*Booker*, we can acknowledge that love, resources and expertise add to a person's prosperity and potential, while starving a person of the same, subverts and diverts who and what they can become. This common sense is at the core of individualized sentencing. And we explained that Abu Mezer's life was exceptionally hard, and, indeed, brutal in most respects. He lost his mother. He grew up impoverished. He was subjected to state-sanctioned brutality and torture. He endured political strife. He had a host of psychiatric problems. As described by the psychologist who evaluated him in 1999, Mr. Abu Mezer's history "is one of disruption, terror, and trauma, beginning with his birth at a time and in a place where violent religious and political conflict spilled into every facet of life, and continuing with his personal experience of his family's suffering." (CA-1, Psychologist Report at p. 5.).

We argued that Abu Mezer's poor mental health supported a non-Guidelines sentence, as Abu Mezer discussed in an affidavit to the court. (D.E. 270). We pointed out that despite many hardships, Abu Mezer had struggled to better himself while imprisoned, for instance by, completing the Secure Stages Program. (D.E. 262, Attachment 2). We also argued that Abu Mezer's family ties should be considered, and his family provided letters of support for the Court to review. (D.E. 260, Exhibit D). We also asked that Abu Mezer's conditions of confinement should be considered, noting that he had spent the vast majority of his time incarcerated either in special housing or administrative segregation, and many years at United States Penitentiary, Florence ADMAX, and that he had contracted COVID-19. We pointed out that another mitigating factor is that Abu Mezer would be deported.

We also argued that absent the application of the terrorism-related enhancements, Abu Mezer's total offense level would be 35, with a criminal history category of I, resulting in a Guideline range of 168 to 210 months.[18] We argued that the terrorism enhancements had an inflationary impact on Abu Mezer's sentence, similar to what was discussed in *United States v.*

---

[18]Notably, the 2021 Guidelines now reference U.S.S.G. § 2M6.1(a)(2) for Abu Mezer's remaining convictions, not U.S.S.G. § 2A2.1(a)(1), but both set a 28 base offense level.

*Dorvee*, 616 F.3d 174 182 (2d Cir. 2010), where this Court addressed the automatic and severe Guidelines enhancements in child pornography cases.

We argued that the 12-level "terrorism" enhancement under § 3A1.4 is the product of a Congressional directive to the Sentencing Commission and not the result of the Commission's institutional role of developing guidelines based on empirical data. *See* U.S.S.G., App. C, Amend. 526. This artificial determination could only be reasonable if it was based on valid statistics and principles, which form the basis for the Guidelines' continued viability and influence after *Booker*. *See Rita v. United States*, 551 U.S. 338, 349 (2007) (outlining the "empirical approach" that the Sentencing Commission used to structure the Sentencing Guidelines); *cf.* U.S. Sentencing Guidelines Manual § 1A1.3 (listing honesty, uniformity, and proportionality as Congress' objectives in creating the Sentencing Guidelines).

We argued that when U.S.S.G. § 3A1.4 was adopted in 1995, there had been very few anti-terrorism cases, so there could be no analysis of a statistically reliable group of defendants upon which to build a reliable Guideline. *See, e.g.*, James P. McLoughlin, Jr., *Deconstructing United States Sentencing Guidelines Section 3A1.4: Sentencing Failure in Cases of Financial Support for Foreign Terrorist Organizations*, 28 LAW & INEQ.

51, 112, n. 421 (2010) (noting that § 3A1.4 went into effect November 1, 1995, and pre-1997 statistics on terrorism cases are not readily available or reliable but noting that even post 2001, terrorism prosecutions were relatively rare and did not readily offer a reliable statistical sample).

We argued that the enhancement is exceptionally blunt. *See, e.g., United States v. Stewart*, 590 F.3d at 93; and *United States v. Awan*, 607 F.3d 306 (2d Cir. 2010). U.S.S.G. § 3A1.4 does not take individual characteristics into account and therefore makes no meaningful distinctions between different types of defendants. *See* James P. McLoughlin, Jr., 28 LAW & INEQ. at 100; *see Stewart*, 590 F.3d at 139 ("it was not unreasonable for the district judge to decide that the fact that no injury in the case mitigated the gravity of [the defendant's] offense") (footnote omitted).

We noted that the use of the terrorism enhancements not only automatically increased Abu Mezer's offense level but also automatically increased his criminal history category to category VI, which otherwise would be category I. The justification for the increase has been that "even terrorists with no prior criminal behavior are unique among criminals in the likelihood of recidivism, the difficulty of rehabilitation, and the need for incapacitation." *United States v. Meskini,* 319 F.3d 88, 92 (2d Cir. 2003). But given the lack of empirical evidence, and Abu Mezer's background and

characteristics, that argument has no application here.  And it is Orwellian to give a person a history they do not have.

Finally, we argued that courts routinely consider the terrorism enhancements to be incompatible with 18 U.S.C. § 3553(a).  *See, e.g.*, *United States v. Nayyar*, 2013 U.S. Dist. LEXIS 79002, at *18-24 (S.D.N.Y. June 4, 2013) (While applying U.S.S.G. §§ 2M5.3 and 3A1.4, a district court varied from the advisory range because of (1) the lack of empirical evidence used to create both Guideline enhancements, (2) their broad language encompassing virtually every terrorism related case, (3) the lack of proof that the defendant was a terrorist, (4) the defendant's pre-enhancement absence of a criminal history, and (5) the determination that consecutive sentences were inappropriate); *United States. v. Viglakis*, 12 Cr. 585 (SHS) (S.D.N.Y.), Document No. 60, Sep. 3, 2014 Sentencing Transcript, at pp. 5, 28-37 (There, the defendant's Guidelines range was 360 months to life imprisonment based on the application of U.S.S.G. §§ 3A1.4 and 2M5.3, although his sentence range was statutorily capped at 15 years.  The court weighed all the factors under 18 U.S.C. § 3553(a), including the defendant's serious health condition, and determined that a sentence of 10 years was sufficient); and *United States v. Batiste*, et al., 06 Cr. 20373 (JAL) (S.D.F.L.), Document No. 1503, Nov. 20, 2009 Sentencing Transcript at pp.

58, 59, 120-129, 148 (Defendant sentenced to 162 months, based on Section 3553(a), in case where he conspired to blow up buildings, took an oath of loyalty to Al Qaeda, photographed and video recorded a FBI building and federal buildings, and provided a list of materials needed such as weapons, vehicles, and cash, to the informants).

We also argued that the court must consider "the need to avoid unwarranted sentencing disparities among defendants with similar conduct." 18 U.S.C. § 3553(a)(6). We noted that with the terrorist enhancements, the Guidelines call for life imprisonment, and to put that extreme result in perspective, we also noted that in fiscal year 2018, the average sentence for defendants convicted of murder was 291 months, and the median sentence was 292 months; while for kidnapping, the average and median sentences were 179 months and 138 months, respectively.[19]

Nevertheless, on January 9, 2023, the district court granted Abu Mezer's petition in part, vacating his § 924(c) conviction and 30-year sentence on Count Three, but stated that the judgment of conviction and sentence remained unchanged in all other respects and that since the court's

---

[19]*See U.S. Sentencing Comm'n, 2018 Sourcebook of Federal Sentencing Statistics*, Table 15 (2018), https://www.ussc.gov/research/sourcebook/archive/sourcebook-2018.

decision not to resentence Abu Mezer did not implicate a constitutional right, a certificate of appealability would not issue. (A-46).

Judge Block found that Abu Mezer's *Johnson/Davis* claim was the only claim that satisfied the requirements for a successive motion, and so did not address these other claims, "which were, in any event, raised and rejected in one or more of his prior § 2255 applications." (A-47).

As for a *de novo* resentencing Abu Mezer, Judge Block decided:

> The Court must now decide whether to resentence Abu Mezer. When a conviction is vacated on direct appeal, the "default rule" is that the district court must resentence the defendant de novo on the remaining counts. *See United States v. Rigas*, 583 F.3d [at 115] (*citing United States v. Quintieri*, 306 F.3d 1217, 1227-28 (2d Cir. 2002)). However, the Second Circuit recently held that the same rule does not apply to a vacatur resulting from a successful § 2255 motion. *See United States v. Peña*, [58 F.4th at 613]. Rather, the statute's plain text "vests district courts with discretion to select the appropriate relief from a menu of options." *Id.* at 372. Having vacated a conviction, the district court may "discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).
>
> Here, the Court exercises its discretion to "correct" Abu Mezer's sentence rather than resentencing him. As noted, a successive § 2255 motion is authorized only in exceptional circumstances. The only circumstance justifying Abu Mezer's successive motion is the Supreme Court's decision to apply *Johnson* and *Davis* retroactively to cases on collateral review. The remedy should, in the

> Court's view, be similarly limited. Resentencing
> Abu Mezer on his § 2332a convictions – the
> validly of which is beyond dispute – would raise
> all sorts of sentencing issues going far beyond the
> implications of *Johnson* and *Davis* and, therefore,
> beyond the proper scope of a successive § 2255
> motion. In any event, the seriousness of the
> offense leads the Court to conclude that it would
> adhere to the original sentence.

(A-53, 54). A timely Notice of Appeal was filed. (A-55, 56, 62, 63).

## **SUMMARY OF ARGUMENT**

The district court correctly determined that Abu Mezer's conviction
under 18 U.S.C. § 924(c) (Count Three) could not stand after *United States
v. Davis*, 139 S. Ct. at 2319. The court thus granted Abu Mezer's § 2255
motion and vacated the conviction under § 924(c). The court erred, and
abused its discretion, however, in refusing to resentence Abu Mezer on the
two remaining counts (Counts One and Two), charging violations of 18
U.S.C. § 2332a(a)(2) and (c)(2), and simply entering an amended judgment
without the § 924(c) count but letting stand the life sentences imposed.

We acknowledge *Peña* changed the default rule in this Circuit, that *de
novo* resentencing is required when a count of conviction is later vacated.
We contend that *Peña* was wrongly decided and that resentencing is
mandatory because a sentence is "based on the constellation of offenses for
which the defendant was convicted," *United States v. Quintieri*, 306 F.3d at

1227, and "[w]hen part of a conviction is vacated ... 'the constellation of offenses of conviction has been changed.'" *United States v. Weingarten*, 713 F.3d 704, 711-12 (2d Cir. 2013) (*quoting Quintieri*, 306 F.3d at 1227–28). The district court "must confront the offenses of conviction and facts anew," *Quintieri*, 306 F.3d at 1228, and "must reconsider the sentences imposed," *United States v. Rigas*, 583 F.3d at 118. Whether vacatur occurs on direct appeal or collateral review is irrelevant; the rationale of the *Quintieri-Rigas* rule applies. We further contend that under the circumstances of this case, it was an abuse of discretion not to grant Abu Mezer a *de novo* sentencing.

**ARGUMENT**

**POINT I**

**THE DISTRICT COURT ERRED IN REFUSING TO SENTENCE ABU MEZER *DE NOVO***

**A.    *Peña* Was Wrongly Decided**

Respectfully, *Peña* was wrongly decided, and Judge Block was wrong in relying on it in denying Abu Mezer a *de novo* resentencing.

After granting Abu Mezer's § 2255 motion and vacating one count of conviction, the district court denied his motion to be resentenced *de novo*. Until *Peña*, 58 F.4th at 613, this Court consistently held that a defendant is entitled to *de novo* resentencing following the vacatur of a count of

20

conviction whether on direct appeal or from a habeas petition. In fact, one of the principal cases supporting this rule, *United States v. Quintieri*, 306 F.3d at 121, was an appeal following the grant of a § 2255 motion. Nothing in *Quintieri*, or the subsequent opinion on this rule, *United States v. Rigas*, 583 F.3d at 108, contravenes the application of the default rule to § 2255 cases.

Whether a count was vacated on direct appeal or collaterally is irrelevant. There is no "section 2255 exception" to *Rigas's* holding that "where a count of conviction is overturned – as opposed to an aspect of a sentence – resentencing must be *de novo*." 583 F.3d at 116. Until *Peña*, none of this Court's cases applying the rule said that it governs only when a count is vacated on direct appeal.

Until *Peña*, this Court described the rule broadly and applicable whenever a count is vacated. *See, e.g., United States v. Natal*, 849 F.3d 530, 538 (2d Cir. 2017) ("[T]his Court has recently confirmed that when a count of conviction is overturned due to a 'conviction error,' the proper remedy is *de novo* resentencing . . . ."). This aligns with the principle that "[t]he most appropriate remedy" in the § 2255 context, Brian Means, *Federal Habeas Manual* § 13:7 (2022 ed.), "is to put § 2255 defendants in the same boat as

direct appellants, *i.e.*, to permit resentencing." *United States v. Hillary*, 106 F.3d 1170, 1172 (4th Cir. 1997).

*Quintieri* itself – reviewing a resentencing following the grant of a § 2255 motion – described its holding in general terms: "Today we conclude that when a resentencing results from a vacatur of a conviction, we in effect adhere to the *de novo* default rule." 306 F.3d at 1228 n.6. *Rigas*, a direct appeal, summarized it broadly: "*Quintieri* supplies two pertinent rules: (1) where a count of conviction is overturned – as opposed to an aspect of a sentence – resentencing must be *de novo*; and (2) de novo means 'anew.'" 583 F.3d at 116 (*quoting Quintieri*, 306 F.3d at 1228); *see also Kaminski v. United States*, 339 F.3d 84, 89 n.3 (2d Cir. 2003) (noting that "[w]here a habeas challenge to incarceration results in the overturning of a conviction, . . . the defendant must later be resentenced in toto").

The logic of the *Rigas-Quintieri* rule applies with equal force to § 2255 proceedings. Vacatur of a count alters the "constellation of offenses" upon which a sentence is based, regardless of how the vacatur occurs. Whenever a count is removed, the court "must confront the offenses of conviction and the facts anew" in order to "sentence the defendant accurately and appropriately." 306 F.3d at 1228; *see also United States v. Draper*, 553 F.3d 174, 184 (2d Cir. 2009) (conviction reversed on two

counts which were dismissed requiring *de novo* resentencing); and *United States v. Powers*, 842 F.3d at 177.

In such cases, the lower court must consider changes to the "factual mosaic", including facts that have occurred since the original sentencing. *See, e.g., United States v. Bryson*, 229 F.3d 425, 426 (2d Cir. 2000) (per curiam) (post-sentencing rehabilitation); *see also Werber v. United States*, 149 F.3d 172, 178 (2d Cir. 1998) ("[T]he district court was required to resentence in light of the circumstances as they stood at the time of his resentencing"). None of these considerations is exclusive to direct appeals.

As post-*Quintieri* cases establish, the vacatur of any count of conviction, no matter how tangential that count may appear, necessitates *de novo* resentencing. *See, e.g., United States v. Hertular*, 562 F.3d 433, 446 (2d Cir. 2009) (applying *Quintieri* and requiring *de novo* resentencing because reversal of one of four counts of conviction "changes the 'constellation of offenses' relevant to sentencing," even though "the 'factual mosaic' may be little altered"). "[E]ven in these circumstances, we must vacate the defendant's sentence and remand the case to the district court so that it may decide, in the first instance, whether a conviction on three rather than four counts affects its assessment of the sentencing factors detailed in 18 U.S.C. § 3553(a)." *Id.*

23

As a result, this Court's *Quintieri-Rigas* rule provides a reasonable rubric on which to review a district court's exercise of discretion under Section 2255.  Section 2255(b) directs the district court upon finding that a judgment is vulnerable to collateral attack to determine the "appropriate" relief including whether to "vacate and set the judgment aside and … discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."  This Court's *Quintieri-Rigas* rule informs the district courts in this Circuit how to determine what remedy is appropriate.  The purpose of this rule is to ensure that the defendant is sentenced as he appears before the court.  Short-circuiting that process by allowing district judges to excise the portion of the sentence imposed on the vacated count not only undermines that principle but is also antithetical to the concept that different portions of a sentence are part of the same fabric, whether one calls it a constellation or rubric, such that once a district vacates a conviction it must review the entire fabric.  When a district court acts, it must go all in, and look at the defendant as he appears at that time.

The instant case is a clear example of why justice requires this result. Decades have passed since the initial crimes and sentencing.  *Booker* was not on the books when Abu Mezer was sentenced.  That fact alone necessitated a *de novo* resentencing, as the court demurred from any

24

analysis, denying Abu Mezer of *all* rights afforded *all* sentenced defendants in the post-*Booker* era. *See, e.g.*, *United States v. Dorvee*, 616 F.3d at 179 (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). Those rights include ensuring the district court committed no "significant procedural error" in imposing the sentence. *Id.* They include that "[a]t the outset of the sentencing proceedings, the district court must determine the applicable Guidelines range." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1342 (2016) (citing *Peugh v. United States*, 569 U.S. 530, 536 (2013)). They include a review of a district court's interpretation of the Sentencing Guidelines *de novo*. *See, e.g., United States v. McGinn*, 787 F.3d 116, 129 (2d Cir. 2015); *see United States v. Genao*, 343 F.3d 578, 583 (2d Cir. 2003). They include reviewing other aspects of sentencing for an abuse of discretion. *See United States v. Archer*, 671 F.3d 149, 169 (2d Cir. 2011); *United States v. Dorvee*, 616 F.3d at 179. They include ensuring that the guidelines, along with the factors listed in 18 U.S.C. §3553(a), are considered and that a sentence is not based on clearly erroneous facts and that a sentence is adequately explained. *Gall*, 552 U.S. at 50; *United States v. Rattoballi*, 452 F.3d 127, 131 (2d Cir. 2006); *United States v. Crosby*, 397 F.3d 103, 114-15 (2d Cir. 2005). They include a Circuit review "that … involves consideration not only of the sentence itself but also of the

procedures employed in arriving at the sentence. *United States v. Fernandez*, 443 F.3d 19, 26 (2d Cir. 2006); *Crosby*, 397 F.3d at 114. Those rights also include whether a district court's sentence is substantively reasonable. *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc). And those rights include a hearing. *United States v. Fatico*, 603 F.2d 1053 (2d Cir. 1979).

The result, in this case, shows why *Peña* is wrongly decided. Judge Block chose not to resentence Abu Mezer because it "would raise all sorts of sentencing issues" and "the seriousness of the offense leads the Court to conclude that it would adhere to the original sentence." (A-54). That was it. No discussion. No analysis. Just fiat. This is reversible error. Defendants, like Abu Mezer, deserve more. And unfortunately, by deciding *Peña*, this Court has ushered in an era reducing many defendants' § 2255 victories into pyrrhic formalities.

There was indeed a lost opportunity lost here. Unlike 1999, Judge Block had comparable cases to inform a reasonable sentence for Abu Mezer, and one that was not greater than necessary. In 2023, the parties and the court could have discussed and evaluated Abu Mezer's 3553(a) factors, including his background and characteristics, physical and mental health, and his progress while incarcerated. *See, e.g., Bryson*, 229 F.3d at 426 (on

remand in direct appeal, defendant entitled to present evidence of post-sentencing rehabilitation).  The court could have considered Abu Mezer's argument regarding the terrorism enhancements' Orwellian nature when giving people histories they do not have.  *Pepper v. United States*, 562 U.S. 476, 501 (2011).

Denying Abu Mezer an opportunity to present evidence and discuss these matters produces an intrinsically unjust result.

While we acknowledge that there may be some cases in which *de novo* resentencing is unnecessary as a matter of law, for example when the defendant is facing mandatory life sentences of one or more surviving counts, *de novo* resentencing is required, where, as here, there are factual issues and changed circumstances regarding whether the lower court should simply reinstate the sentence on the surviving counts without considering the defendant at the time of sentencing.

Moreover, *Peña* cited *United States v. Gordils*, 117 F.3d 99 (2d Cir. 1997), for the proposition that "judges have discretion with respect to resentencing in the § 2255 context." *Peña*, at 619.  But the holding of that case – decided long before *Rigas* settled this question in this Circuit in 2009 – is that district courts are empowered to resentence *de novo* after vacating a

count of conviction, which is of course consistent with the *Rigas-Quintieri* rule.

Indeed, *Gordils* contravenes the critical premise of *Peña*'s ruling – that a § 2255 proceeding so differs from direct review as to counsel against *de novo* resentencing following conviction error. *Gordils* rejected the defendant's argument that "that the situation is different when a § 924(c) conviction is overturned on collateral review," rather than on appeal, because "an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." 117 F.3d at 103. "We see no compelling reason why the legal interdependence of sentences under the guidelines should not as surely lead us to reconsider related sentences in the context of collateral attack as it does in the context of a direct appeal." *Id.*

Finally, *Peña's* claim is wrong that "[s]ection 2255's plain text, which vests district courts" with broad discretion "to select the appropriate relief from a menu of options, precludes [this Court] from applying the default rule in *Rigas* to all cases that arise in the § 2255 context." *Peña*, at 619. Broad and flexible remedial power, the argument goes, trumps the mandatory-resentencing rule.

This fails because this Court possesses remedial authority at least as flexible and broad as that granted by § 2255 – but is nonetheless bound by the *Rigas-Quintieri* rule. Section 2106 of Title 28 vests federal appellate courts with sweeping power:

> The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.

*Id.* The statute delegates "very broad remedial authority" to appellate courts. *Yaman v. U.S. Dep't of State*, 634 F.3d 610, 612 (D.C. Cir. 2011). Any disposition deemed "just under the circumstances" can be ordered. *United States v. Guiliano*, 644 F.2d 85, 89 (2d Cir. 1981); *see, e.g., United States v. Jones*, 878 F.3d 10, 20, 24 n.6 (2d Cir. 2017) (finding no error and affirming defendant's sentence, but remanding and directing district court to "reconsider the sentence imposed" – and to impose a new sentence if appropriate – due to case's unusual procedural history).

Section 2106 thus grants this Court remedial power at least as "flexible" and expansive as that granted by § 2255 to the district court. And if the *Rigas-Quintieri* rule is compatible with § 2106, it is also compatible

with § 2255. In either context, if a court overturns a count of conviction, *de novo* resentencing must follow.

## B.  Judge Block Abused His Discretion

If this Court finds that *Peña* and the *Rigas-Quintieri* rule did not require a *de novo* resentencing, the Court will review the court's decision denying Abu Mezer's application for a plenary resentencing under a deferential abuse of discretion standard. *See United States v. Ayyad*, No. 20-3832, 2023 U.S. App. LEXIS 3460, at *3 (2d Cir. Feb. 14, 2023) ("[T]he district court did not abuse its discretion in denying Defendant's request for *de novo* resentencing.").

Under that standard, the Court should reverse and remand this case. Abu Mezer demonstrated that he merits resentencing as a discretionary matter as discussed above at pages 4, 5, 10-17, and 26, 27. *See Quintieri*, 306 F.3d at 1230. By engaging in a mechanical resentencing by merely removing the sentence for the voided charge, Judge Block abused his discretion by ignoring facts and changes in the law, like *Booker*, which have occurred since Judge Raggi imposed sentence. Abu Mezer deserved an opportunity to present evidence of these facts and legal arguments prior to resentencing.

Here, Judge Block gave no reasoning for his decision other than to say it "would raise all sorts of sentencing issues" and "the seriousness of the offense leads the Court to conclude that it would adhere to the original sentence." (A-54). By stating "all sorts of sentencing issues" would be raised by a resentencing, Judge Block admitted that the circumstances had changed and that resentencing would not be a mere formality. And it was an abuse of discretion to simply focus on "the seriousness of the offense" without taking the full array of 18 U.S.C. § 3553(a) factors into account.

For instance, in *Quintieri*, the Second Circuit held that a § 2255 movant who secured a limited resentencing – based only on a potential sentencing error – was entitled, as a matter of law, to present evidence of post-sentencing rehabilitation as grounds for a downward departure. 306 F.3d at 1232 ("To the extent that [the movant] argues that he should receive a downward departure for rehabilitation that occurred subsequent to his initial sentencing, this argument is similarly not barred because it is based on 'intervening circumstances.'"); *cf. United States v. Brooker*, 976 F.3d 228, 238 (2d Cir. 2020) (discussing compassionate release, 18 U.S.C. § 3582).

Having established conviction error, Abu Mezer stands on firmer footing than the defendant in *Quinteri*. *See, e.g., Bryson*, 229 F.3d at 426).

31

Thus, it was an abuse of discretion for Judge Block not to grant Abu Mezer a *de novo* resentencing.

## **CONCLUSION**

Based on the foregoing reasons, this Court should vacate the amended judgment and remand the case for *de novo* sentencing.

Dated:      Brooklyn, New York
             May 1, 2023

MICHAEL HUESTON, ESQ.[20]
*Attorney for Defendant-Appellant Gazi*
*Ibrahim Abu Mezer*
16 Court Street, 35th Floor
Brooklyn, New York 11241
(718) 246-2900
By:

/s/ MICHAEL HUESTON

---

[20]Richard J. Cardinale, Esq. is on the brief, *pro bono*.

## <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(i), and the word limit of Fed. R. App. P. 32(a)(7)(A), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 7,021 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word with 14 characters per inch and Times New Roman.

Dated:    Brooklyn, New York
              May 1, 2023

                                        /S/Michael Hueston
                                        Michael Hueston